**Ronald G. BRYANT, Plaintiff–Appellant,**

v.

**David MADIGAN, Nancy Griffin, and Dorothy Mulcahey, Defendants–Appellees.**

No. 95–2349.

United States Court of Appeals, Seventh Circuit.

Submitted March 14, 1996.

Decided May 17, 1996.

Ronald G. Bryant (submitted), Urbana, IL, pro se.

Lorna K. Geiler, Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, Champaign, IL, James C. Dedman, Office of the State's Attorney of Champaign County, Urbana, IL, for David Madigan, Nancy Griffin, Dorothy Mulcahey.

Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.

POSNER, Chief Judge.

Bryant, an Illinois state prisoner, brought this damages suit against his keepers, complaining that they had refused his request for guardrails for his bed and that as a result he had broken his leg when a severe leg spasm caused him to fall out of bed. (Bryant is a paraplegic, and leg spasms are a symptom of his condition.) He also complains that after the operation to fix his leg he was denied pain medication. He claims that the defendants' conduct violated both the Eighth

Amendment and the Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* The district judge granted summary judgment for the defendants. In reliance on an affidavit and deposition by medical practitioners he concluded that the defendants had not been deliberately indifferent to Bryant's medical needs. And he held that the disabilities act is inapplicable to Bryant's claim.

■ In basing his decision on the affidavit and deposition when he did, the district judge jumped the gun, in violation of the rule of *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982), that an unrepresented party must be notified of the consequences of failing to respond to evidence presented in support of his opponent's motion for summary judgment with evidence of his own; must be told, in short, that he cannot rest on his pleadings. After the defendants submitted their evidence, the judge "granted [the parties] an additional fourteen days to submit any further materials permitted by Fed.R.Civ.P. 56," but did not say anything about the consequences for Bryant if he failed to take up this invitation. We cannot say that the error was harmless, and we must therefore remand Bryant's Eighth Amendment claim to the district court.

■ The second question presented by the appeal is the applicability of the disabilities act to correctional facilities. The question has divided the circuits. See *Torcasio v. Murray,* 57 F.3d 1340 (4th Cir.1995), which discusses the cases interpreting the Americans With Disabilities Act and the materially identical Rehabilitation Act, 29 U.S.C. § 794. Title II of the ADA, the title that concerns public services, provides that "no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefit of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 42 U.S.C. § 12131. The term "public entity" is defined to include any instrumentality of state or local government. § 12131(1). There is no express exclusion of jails and prisons. A total exclusion would mean that the states had no duty to avoid discriminating against, and no duty to accommodate the reasonable needs of, persons who

wanted to work as correctional officers, lawyers who had clients in jail or prison whom they wanted to visit, or, as in *Pack v. Arkansas Valley Correctional Facility,* 894 P.2d 34, 39 (Colo.App.1995), other visitors.

■ Even if such persons are protected, however, which we need not decide (for Congress may not have wanted to burden the states with the potentially enormous costs of making their prisons fully accessible to disabled visitors and employees), it would not necessarily follow that prisons or jails that offer educational or vocational programs for prisoners must redesign their programs to accommodate the needs of disabled prisoners. It is very far from clear that prisoners should be considered "qualified individual[s]" within the meaning of the Act. Could Congress really have intended disabled prisoners to be mainstreamed into an already highly restricted prison society? Most rights of free Americans, including constitutional rights such as the right to free speech, to the free exercise of religion, and to marry, are curtailed when asserted by prisoners; and there are formidable practical objections to burdening prisons with having to comply with the onerous requirements of the Act, especially when we reflect that alcoholism and other forms of addiction are disabilities within the meaning of the Act and afflict a substantial proportion of the prison population. Although there is authority that prisoners employed in the prison may be protected by Title VII of the Civil Rights Act of 1964, *Baker v. McNeil Island Corrections Center,* 859 F.2d 124, 128 (9th Cir.1988), there is contrary authority, *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991); and arguments that prisoners employed within the prison (as distinct from prisoners on work release) are protected by the Fair Labor Standards Act and thus entitled to the federal minimum wage have been uniformly rejected. E.g., *Vanskike v. Peters,* 974 F.2d 806 (7th Cir.1992); *Morgan v. MacDonald,* 41 F.3d 1291 (9th Cir.1994); *McMaster v. Minnesota,* 30 F.3d 976 (8th Cir.1994); *Henthorn v. Department of the Navy,* 29 F.3d 682 (D.C.Cir.1994); *Hale v. Arizona,* 993 F.2d 1387, 1392–98 (9th Cir.1993) (en banc). Judge-made exceptions, see *id.* at 1392, to

laws of general applicability are justified to avoid absurdity. Cf. *Reich v. Great Lakes Indian Fish & Wildlife Comm'n*, 4 F.3d 490 (7th Cir.1993). And an exception to the Americans With Disabilities Act for prisoners, though not express, may have textual foundation in the term "qualified individual."

 Even if there were (as we doubt) *some* domain of applicability of the Act to prisoners, the Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled. His complaint is that he was not given special accommodation. Unlike the prisoner plaintiffs in *Love v. McBride*, 896 F.Supp. 808 (N.D.Ind.1995), or *Donnell v. Illinois State Bd. of Education*, 829 F.Supp. 1016, 1020 (N.D.Ill.1993), he is not complaining of being excluded from some prison service, program, or activity, for example an exercise program that his paraplegia would prevent him from taking part in without some modification of the program. He is complaining about incompetent treatment of his paraplegia. The ADA does not create a remedy for medical malpractice.

Standards of medical care are not irrelevant to the statute. Disabled people often cannot participate in programs and activities unless special attention is given to their medical needs. But incarceration, which requires the provision of a place to sleep, is not a "program" or "activity." Sleeping in one's cell is not a "program" or "activity." Even apart from the prison setting it would be extremely odd to suppose that disabled persons whose disability is treated negligently have a federal malpractice claim by virtue of the Americans With Disabilities Act, whereas a sick or injured but not disabled person—a person suffering from an acute viral infection, perhaps, or who has broken his leg, or who has a hernia or an inflamed gall bladder—must be content with the remedy that the state law of medical malpractice provides. Moreover, the courts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners. We

would be exceedingly surprised to discover that Congress had made an end run around these decisions in the Americans With Disabilities Act.

In light of our conclusion that Bryant failed to state a claim under the ADA, we need not decide whether he named the proper parties as defendants to that claim.

We have not considered the possible bearing on this suit of the new Prison Litigation Reform Act, enacted on April 26, 1996, as part of the federal omnibus fiscal year 1996 appropriations measure. That will be a matter for the district court to consider on remand.

The judgment dismissing Bryant's suit is

AFFIRMED IN PART AND REVERSED IN PART.