**Ricky CRAWFORD, Plaintiff,**

v.

**INDIANA DEPARTMENT
OF CORRECTION,
Defendant.**

**No. 3:96–cv–125RP.**

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 15, 1996.

John W. Emry, Jr., Franklin, IN, for plaintiff.

Martha J. Arvin, Office of Indiana Attorney General, Indianapolis, IN, for defendant.

## MEMORANDUM AND ORDER

PIERCE, United States Magistrate Judge.

Plaintiff, Ricky Crawford, brings this civil action for damages against defendant, the Indiana Department of Correction ("DOC"), alleging violations of his rights under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended. This case is now before the court on the parties' cross-motions for judgment on the pleadings. For the reasons that follow, Mr.

Crawford's motion is denied and the DOC's motion is granted.

### Applicable Standard

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standards as a motion to dismiss under Rule 12(b). *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir.1995); *Craigs, Inc. v. General Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir. 1993); *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989). The court must take the complaint's well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff when challenged by a motion to dismiss. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gomez v. Illinois State Board of Education,* 811 F.2d 1030 (7th Cir. 1987).

A motion to dismiss will not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994); *Harris v. City of Auburn,* 27 F.3d 1284, 1285 (7th Cir.1994); *Gomez,* 811 F.2d 1030 (7th Cir. 1987). Even under the notice pleading of the Federal Rules of Civil Procedure, a complaint must include allegations respecting all material elements of all claims asserted. *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991); *Strauss v. City of Chicago,* 760 F.2d 765, 768 (7th Cir.1985); *Sutliff, Inc. v. Donovan Companies,* 727 F.2d 648, 654 (7th Cir.1984). Bare legal conclusions attached to narrated facts will not suffice. *Strauss,* 760 F.2d at 768; *Sutliff,* 727 F.2d at 654.

### The Pleadings

At all times relevant, Mr. Crawford was a prisoner in the custody of the DOC and confined at the Westville Correctional Center ("WCC") in Westville, Indiana. (Compl. ¶ IV; Answer ¶ 1.) The DOC is responsible for the operation of the WCC (Answer ¶ 1);

it is a public entity and receives federal funds. (Compl. ¶ VI.A.6; Answer ¶ 8.) Because Mr. Crawford was legally blind with deteriorating sight in one eye, he was housed as a permanent patient in the self-care unit at the WCC from December 22, 1994, until his release from the DOC on December 27, 1995. (Compl. ¶ VI.A.2.) Mr. Crawford alleges that during the time he was confined at the WCC he was "denied access with or without reasonable accommodations to the programs, services, facilities, activities, and benefits which were routinely available to the general population of offenders." (Compl. ¶ VI.A.3.)

## Discussion

Mr. Crawford moves for judgment on the pleadings, contending that the DOC is not entitled to assert the defense of qualified immunity and that the federal disability laws apply to state prisons. The DOC moves for judgment on the grounds that neither the Americans with Disabilities Act of 1990 (the "ADA") nor the Rehabilitation Act of 1973 (the "Rehabilitation Act") applied to Mr. Crawford during his incarceration.[1] Because the court concludes that neither the ADA nor the Rehabilitation Act are applicable to state prisoners, the court need not decide whether the DOC is entitled to qualified immunity.[2]

In *Bryant v. Madigan*, 84 F.3d 246, 248–49 (7th Cir.1996), the Seventh Circuit found that a prisoner's complaint alleging that corrections officials failed to attend to the medical needs of disabled prisoners failed to state a claim under the ADA. Although the court did not find it necessary to decide the more fundamental question of whether the ADA is applicable to prisoners in general, it did express strong doubt. Noting that the circuits were divided on the issue, the court observed that persons leave some rights behind upon incarceration and that application of the ADA to prisoners presented "formidable practical objections to burdening prisons with having to comply with the onerous requirements of the Act." *Id.* at 248. The court questioned whether "prisoners should · be considered 'qualified individual[s]' within the meaning of the Act" and whether Congress "intended disabled prisoners to be mainstreamed into an already highly restricted prison society." *Id.* at 248.

The Fourth Circuit's decision in *Torcasio v. Murray*, 57 F.3d 1340 (4th Cir.1995), *cert. denied sub nom. Torcasio v. Angelone,* —— U.S. ——, 116 S.Ct. 772, 133 L.Ed.2d 724 (1996), provides additional guidance for today's decision. In that case, the court held that it was not clearly established during the spring of 1993 through the spring of 1994, the time of the alleged violations, that the Rehabilitation Act and ADA applied to prisoners. The court thus concluded that the defendant prison officials were entitled to qualified immunity with respect to those claims. In reaching its decision, the Fourth Circuit considered the broad language in Title II of the ADA defining "public entities," 42 U.S.C. § 12131(1) ("public entities" includes "any State or local government" and "any department, agency, ... or other instrumentality of a State or States or local

---

**1.** It is noted that the Eleventh Amendment is no bar to Crawford's claims under the Rehabilitation Act and the Americans with Disabilities Act against the Indiana Department of Correction. *See* 42 U.S.C. § 2000d–7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 ... or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."); 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."); *Eisfelder v. Michigan Dept. Of Natural Resources*, 847 F.Supp. 78 (W.D.Mich.1993) (holding Eleventh Amendment did not bar suit against state alleg-

ing violation of Rehabilitation Act and Americans with Disabilities Act; Congress expressly abrogated Eleventh Amendment immunity in those statutes.); *Martin v. Voinovich*, 840 F.Supp. 1175 (S.D.Ohio 1993) (Congress abrogated states' Eleventh Amendment immunity under ADA); *Joshua B. v. New Trier Tp. High Sch. Dist. 203*, 770 F.Supp. 431 (N.D.Ill.1991); *McGuire v. Switzer*, 734 F.Supp. 99 (S.D.N.Y.1990) (Rehabilitation Act not barred by Eleventh Amendment).

**2.** It is noted that the issue of whether an entity such as the DOC may raise the defense of qualified immunity has not yet been resolved. *Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396, 1400 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2138, 128 L.Ed.2d 867 (1994).

government") and Rehabilitation Act, 29 U.S.C. § 794(a) (preventing discrimination against disabled individuals "under any program or activity receiving Federal financial assistance), and 29 U.S.C. § 794(b)(1)(A) (defining "program or activity" to include "all of the operations of ... a department, agency, special purpose district, or other instrumentality of a State or of a local government"), but was not persuaded that the language "even when viewed in isolation from the arguably narrowing test found elsewhere in the acts, brings state prisons 'squarely' within the reach of these acts." *Torcasio,* 57 F.3d at 1344. The court's decision was guided by consideration of federal-state relations. *Id.* at 1344–46. Following well-established rules of statutory construction, the court explained:

> [I]f Congress intends to alter the "usual constitutional balance between the States and the Federal Government," it must make its intention to do so "unmistakably clear in the language of the statute." Congress should make its intention "clear and manifest" if it intends to pre-empt the historic powers of the States, or if it intends to impose a condition on the grant of federal moneys.... [W]here application of a federal statute to a state "would upset the usual constitutional balance of federal and state powers[,] ... 'it is incumbent upon federal courts to be certain of Congress' intent before finding that federal law overrides' this balance."

*Id.* at 1344–45 (citations omitted); *see Gregory v. Ashcroft,* 501 U.S. 452, 460, 111 S.Ct. 2395, 2400–01, 115 L.Ed.2d 410 (1991); *Will v. Michigan Dept. Of State Police,* 491 U.S. 58, 65, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989); *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242–43, 105 S.Ct. 3142, 3147–48, 87 L.Ed.2d 171 (1985); *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *see also United States v. Lopez,* — U.S. ——, ——, 115 S.Ct. 1624, 1655, 131 L.Ed.2d 626 (1995) (Souter, J., dissenting) (clear statement rule applicable where case

"implicates Congress' historical reluctance to trench on state legislative prerogatives or to enter into spheres already occupied by the States.").

Relying on the long line of Supreme Court precedent which established the principle that "management of state prisons is to be left to the states," the Fourth Circuit concluded that "the management of state prisons is a core state function." *Torcasio,* 57 F.3d at 1345–46. See *Turner v. Safley,* 482 U.S. 78, 84–85, 107 S.Ct. 2254, 2259–60, 96 L.Ed.2d 64 (1987), *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400–01, 69 L.Ed.2d 59 (1981), *Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979), *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974) ("[W]here state penal institutions are involved, federal courts have a further reason [in addition to the inefficacy ·of judicial intervention] for deference to the appropriate authorities."), *overruled on other grounds, Thornburgh v. Abbott,* 490 U.S. 401, 413–14, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989), and *Preiser v. Rodriguez,* 411 U.S. 475, 491–92, 93 S.Ct. 1827, 1837, 36 L.Ed.2d 439 (1973) ("It is difficult to imagine an activity in which a State has a stronger interest ... than the administration of its prisons."). The *Torcasio* court concluded that requiring states to comply with the ADA and Rehabilitation Act "would have serious implications for the management of state prisons." 57 F.3d at 1346. Given the implications of applying the ADA and Rehabilitation Act for the management of state prisons and for federal-state relations as well as the other provisions of the ADA and Rehabilitation Act which were not naturally read as including state prisons,[3] the Fourth Circuit held that the broad, non-specific language did not "clearly establish[ ]" that state prisons come within the purview of the ADA and Rehabilitation Act. 57 F.3d at 1346. The defendant state officials were, therefore, entitled to qualified immunity. *Id.* at 1346, 1352; *see also Gorman v. Bartch,* 925 F.Supp. 653 (W.D.Mo.1996) (holding that arrestee was not

---

**3.** For example, Title II of the ADA—" 'Public Services'—connotes a ban on discrimination in services provided to the public, not in the prison context where the public is excluded." 57 F.3d

at 1346 n. 5. "State prisons ... do not fit neatly within the definition of 'public entities' to which the ADA applies." *Id.*

a "qualified individual" under the ADA); *Little v. Lycoming County*, 912 F.Supp. 809 (M.D.Pa.1996) (holding the ADA inapplicable to prisoners in state prisons); *Staples v. Virginia Dept. of Corrections*, 904 F.Supp. 487 (E.D.Va.1995) (holding that defendants were entitled to qualified immunity against a prisoner's ADA claims and that the ADA was inapplicable in the state prison context); *Fowler v. Gomez*, No. C 94–2679 FMS, 1995 WL 779128 (N.D.Cal. Nov. 22, 1995) (holding it was not "clearly established" that the ADA applied to state prisons in July, 1994).

There is a lack of authority directly contradicting *Torcasio*. No circuit court has expressly held the ADA applicable to a state prisoner's claims, and only one—the Ninth Circuit—has held that Section 504 of the Rehabilitation Act is applicable to a state prisoner's claims. *Bonner v. Lewis*, 857 F.2d 559 (9th Cir.1988). The *Bonner* court relied on the regulations promulgated by the United States Department of Justice, see 28 C.F.R. § 42.503(f), the broad language of the Act itself, and furtherance of the Act's "goals of independent living and vocational rehabilitation" concurrent with "the goals of prison officials as they attempt to rehabilitate prisoners and prepare them to lead productive lives once their sentences are complete." 857 F.2d at 562. The Ninth Circuit, however, retreated from *Bonner* in *Gates v. Rowland*, 39 F.3d 1439 (9th Cir.1994), in which it framed the issue of the applicability of the Rehabilitation Act to a prisoner's claims as "how the Act is to be applied in a prison setting." 39 F.3d at 1446; *cf. Duffy v. Riveland*, Nos. 94–35191, 94–35444, 1996 WL 366442 (9th Cir. Jul. 3, 1996) (applying the ADA and Rehabilitation Act to prisoner's claims). The *Gates* court remarked:

> The Act was not designed to deal specifically with the prison environment; it was intended for general societal application. There is no indication that Congress intended the Act to apply to prison facilities irrespective of the considerations of the reasonable requirements of effective prison administration. It is highly doubtful that Congress intended a more stringent application of the prisoners' statutory rights created by the Act than it would the prisoners' constitutional rights.

39 F.3d at 1446–47. In analyzing the applicability of the Rehabilitation Act to the prison setting, the court applied the standard enunciated in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and held that the state prison policy denying HIV-positive inmates food service jobs did not violate the Rehabilitation Act. *Gates*, 39 F.3d at 1447–48.

Other circuits have not squarely addressed whether the Rehabilitation Act or ADA are applicable to the prison setting. The Eighth Circuit held that an inmate could bring a claim against state prison officials and employees under the Rehabilitation Act; however, the prison officials were held entitled to qualified immunity. *Lue v. Moore*, 43 F.3d 1203, 1205–06 (8th Cir.1994). Significantly, the parties had assumed that the claim under the Rehabilitation Act was proper, and the court agreed. 43 F.3d at 1205. Similarly, the Eleventh Circuit has agreed that prisoner claims are cognizable under Section 504 of the Rehabilitation Act, *Harris v. Thigpen*, 941 F.2d 1495, 1522 n. 41 (11th Cir.1991), but the issue was never squarely presented for decision because the state defendants conceded the applicability of Section 504 to prisoners. The case was remanded for specific findings of fact and conclusions of law regarding whether the plaintiffs, HIV-positive prisoners, were "handicapped" within the meaning of the Act and whether they were "otherwise qualified" for programs and activities from which they had been excluded. *Harris*, 941 F.2d at 1522–25. In *Williams v. Meese*, 926 F.2d 994, 995–97 (10th Cir.1991), the Tenth Circuit held that an inmate in federal custody was not an "employee" of the Federal Bureau of Prisons for purposes of the Rehabilitation Act claims. The court indicated that the Federal Bureau of Prisons did not fit the definition of "programs or activities" under Section 794 of the Rehabilitation Act. *Williams*, 926 F.2d at 997. In a Fourth Circuit case, the court lacked jurisdiction over the Rehabilitation Act claim and, therefore, never reached the question of its applicability to the Bureau of Prisons. *LaFaut v. Smith*, 834 F.2d 389, 395 (4th Cir. 1987).

A number of district courts that have considered actions brought by state prison inmates under the ADA have simply assumed that the ADA applies to state prisons. See *Clarkson v. Coughlin*, 898 F.Supp. 1019 (S.D.N.Y.1995) (holding that the defendant state prison officials violated the Rehabilitation Act and Title II of the ADA) [4]; *Austin v. Pennsylvania Dept. of Corrections*, 876 F.Supp. 1437 (E.D.Pa.1995) (approving a proposed settlement agreement in a class action brought by state inmates under Section 1983 and the Rehabilitation Act) [5]; *Harrelson v. Elmore County, Ala.*, 859 F.Supp. 1465 (M.D.Ala.1994) (holding that punitive damages were unavailable under Title II ADA claims; the court did not decide whether the ADA applied to state prisons); *Sites v. McKenzie*, 423 F.Supp. 1190, 1197 (N.D.W.Va.1976) (no non-applicability defense raised by state defendant). One district court expressly held that the ADA does not create a cause of action for state inmates in relation to prison work assignments. *Pierce v. King*, 918 F.Supp. 932 (E.D.N.C. 1996) (relying on *Torcasio*, *Staples*, and *Haston v. Tatham*, 842 F.Supp. 483, 487 (D.Utah 1994) ("it is doubtful that the ADA applies in the case of a disabled prisoner who seeks prison employment.")).

The question of the ADA's applicability to state prisoners has not been directly confronted by a district court in this circuit. *See, e.g., Love v. McBride*, 896 F.Supp. 808 (N.D.Ind.1995) (applicability of the Rehabilitation Act and the ADA not challenged by defendant); *Noland v. Wheatley*, 835 F.Supp. 476 (N.D.Ind.1993) (applicability of the ADA challenged solely on the ground that plaintiff failed to exhaust his administrative remedies). One district court has held the Rehabilitation Act applicable to a pretrial detainee's claims. *Donnell C. v. Illinois State Bd.*

*of Educ.*, 829 F.Supp. 1016, 1020 (N.D.Ill. 1993). *Donnell's* holding was based on the Act's broad definition of "program or activity" which included "all of the operations of a department agency, special purpose district or other instrumentality of a state or local government," 29 U.S.C. § 794(b)(1)(A), as well as the holding of *Bonner v. Lewis*, 857 F.2d 559, 562 (9th Cir.1988). None of these district court decisions engaged in an in-depth analysis of congressional intent.

 As in *Torcasio*, this court is not persuaded that the broad language found in Title II of the ADA defining "public entities," and the language in the Rehabilitation Act defining "program or activity," encompasses state prisons. Congress has not expressed any "clear and manifest" intent to envelop state prisons with either the ADA or the Rehabilitation Act and, unquestionably, the management of a state prison is a core state function. As the Seventh Circuit recently recognized in the context of constitutional claims:

> Imprisonment ... necessarily entails that an inmate lose many of the rights ordinary citizens enjoy. Furthermore, prisons must be able to curtail a prisoner's constitutional rights not only to further correctional goals, such as retribution or deterrence, but also to serve institutional objectives, the most basic of which is the internal security of the prisons themselves.... [P]rison officials must have broad discretion to dictate policies that promote order and safety for inmates and correctional staff. "Running a prison is an inordinately difficult undertaking that requires expertise ... peculiarly within the province of the legislative and executive branches of government.... [S]eparation of powers

---

**4.** The *Clarkson* court relied on the Eleventh Circuit's dicta in *Harris v. Thigpen* and *Bonner v. Lewis*, 857 F.2d 559 (9th Cir.1988), in stating that the Rehabilitation Act has been held to apply to prisoner claims. The question whether state prisons came within the definition of "public entities" came before the court; instead, the court assumed that the definition included state prisons. 898 F.Supp. at 1037.

**5.** In *Austin*, the defendant Department of Corrections conceded that is was a program or activity

receiving federal funds, 876 F.Supp. at 1465 n. 17, and the court, citing *Bonner v. Lewis*, 857 F.2d 559, 562–63 (9th Cir.1988), noted that the Rehabilitation Act was applicable to corrections institutions. *Austin*, 876 F.Supp. at 1465–66. The court determined that barring HIV-positive inmates from jobs in food service and personal service and in industrial positions was likely contrary to the law. 876 F.Supp. at 1465–66 and n. 19.

concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities."

*Rowe v. DeBruyn,* 17 F.3d 1047, 1049–50 (7th Cir.1994) (citations omitted) (quoting *Turner v. Safley,* 482 U.S. 78, 85–86, 107 S.Ct. 2254, 2259–60, 96 L.Ed.2d 64 (1987)), *cert. denied,* —— U.S. ——, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994). It strains common sense to subject a prisoner's ADA and Rehabilitation Act claims to a more stringent review than his constitutional claims. The questions raised in *Bryant,* namely whether "prisoners should be considered 'qualified individual[s]' " within the meaning of the ADA, and whether Congress "intended disabled prisoners to be mainstreamed into an already highly restricted prison society," 84 F.3d at 248, are answered in the negative. The rights under the ADA and Rehabilitation Act are among the many rights enjoyed by ordinary citizens which are suspended during incarceration. Neither the ADA nor the Rehabilitation Act are applicable to Mr. Crawford's claims and, therefore, the DOC is entitled to judgment on the pleadings.

### Conclusion

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings is **DENIED** and the defendant's motion for judgment on the pleadings is **GRANTED**. The Clerk shall enter final judgment accordingly.

**SO ORDERED.**