**Bobby HENARD, Plaintiff–Appellant,**

v.

**Officer GREEN, et al., Defendant–Appellees.**

**No. 00–1483.**

United States Court of Appeals,
Seventh Circuit.

Submitted May 3, 2001 *.

Decided May 15, 2001.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before FAIRCHILD, BAUER, POSNER, Circuit Judges.

ORDER

This appeal arises from an action Bobby Henard brought under 42 U .S.C. § 1983 against a prison guard and two nurses at Wabash Valley Correctional Facility ("WVCF") in Carlisle, Indiana after he fell down some stairs and dislocated his shoulder. Henard claims that the defendants violated his Eighth Amendment rights against cruel and unusual punishment by ignoring the substantial risk that he would fall and by neglecting his resulting injury. The district court entered summary judgment in favor of the defendants. Henard appeals that judgment, as well as the district court's denial of his motion for discovery sanctions. We reverse in part and affirm in part.

I.

When these events took place, Henard was housed on the second floor of WVCF's Secured Housing Unit (the "Unit"), a super-maximum security facility for prisoners who have been violent in other prison settings. The second floor is accessible only by stairs.

On July 19, 1996, guard Joshua Green, who had just come on duty, was walking near Henard's cell when Henard told him that he was having trouble breathing. Green reported Henard's complaint to another guard, Turley, who told Green that medical staff were already on their way to the Unit to see Henard. Shortly before Green came on duty, Turley had called for medical assistance because Henard had complained to him of breathing difficulty. Green and Turley then went to Henard's cell to bring him to the first floor medical area for assessment. To prevent prisoners from harming themselves or the guards, Unit security rules require officers to restrain prisoners with hand cuffs and shackles before removing them from their cells. Accordingly, Green cuffed Henard's hands behind his back, shackled his legs, and attached a lead strap to the cuffs and shackles. Henard (who is over six feet tall and weighs more than two hundred sixty pounds) requested to be transported in a wheelchair, but Green refused. After restraining Henard, Green and Turley escorted him to the stairs. Henard walked approximately ten feet to the stairs unassisted, took several steps down and then

fell down the staircase. It is not clear from the record what caused Henard to fall. Green, who was standing behind Henard at the time, was unable to break his fall.

Immediately after the fall, nurses Marla Gadberry and Betty Falconbury examined Henard for injury on the stairs. Gadberry first saw Henard lying face up, on the stairs with his head leaning on the bottom step. Green and Turley then maneuvered Henard down the steps and placed him on the floor. The nurses observed no bumps or abrasions and, after the examination, took Henard to the medical area and examined him a second time. Henard remained standing throughout this examination, which lasted about a half hour. Although the parties dispute some of the symptoms Henard complained about during the second examination, all agree that Henard complained of some pain in his left elbow. According to the nurses, his left shoulder was not "hanging" without support and no knot or bulge appeared along his shoulder bone. Henard stated that he also complained of extreme pain in his left shoulder and that his shoulder was red and swollen; these facts, however, were denied by the nurses. Henard asked to be sent to a doctor or hospital and X-rayed, but the nurses refused. Both nurses maintain that they did not believe Henard's shoulder was dislocated when they examined him. After examining him, the nurses gave Henard an ice pack for his elbow and sent him back to his cell. About an hour later, Gadberry checked on Henard's condition and observed him in his cell lying on his mattress on his left side, with the ice pack on his arm. Henard asked to see a doctor and Gadberry advised him to elevate his elbow and continue to apply the ice pack. She then signed him up for the next sick call.

On July 24, 1996, a doctor at the prison examined Henard's shoulder and ordered that he be sent to the hospital where his shoulder was X-rayed. Two doctors examined the X-ray, which showed no fracture or dislocation. Nevertheless, a third doctor conducted a physical examination of Henard's shoulder and concluded that it was dislocated. The doctor sedated Henard, re-located his shoulder and prescribed pain medication.

On July 1, 1998, Henard filed this lawsuit under § 1983,[1] alleging that Green was deliberately indifferent to the risk that he, Henard, would be injured while walking down the stairs in restraints. Henard alleged that Green knew he was having breathing problems and might collapse, but ignored this risk by cuffing Henard's hands behind his back and shackling his legs. Henard also alleged that Gadberry and Falconbury were deliberately indifferent to his resulting injury by inadequately examining him. According to Henard, the nurses should have sent him to a doctor or hospital to be X-rayed immediately.

All parties moved for summary judgment. The district court granted summary judgment in favor of Green, Gadberry and Falconbury, and denied Henard's motion. The district court reasoned that Henard produced no evidence that Green actually knew he was unable to walk down the stairs. As for the nurses, the district court reasoned that Henard's claim was merely a disagreement with medical judg-

---

1. The record does not reflect whether Henard exhausted his administrative remedies before filing suit, and the defendants do not raise the issue on appeal. We note, however, that even if Henard failed to exhaust his administrative remedies, the defendants have waived the argument because they did not plead it as an affirmative defense or raise it in a motion to dismiss. *See Massey v. Helman,* 196 F.3d 727, 735 (7th Cir.1999).

ment and thus could not support a finding of deliberate indifference.

## II.

We review *de novo* the district court's grant of summary judgment, accepting the facts in the light most favorable to the non-moving party. *Sherrod v. Lingle,* 223 F.3d 605, 610 (7th Cir.2000). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to take reasonable measures to ensure a prisoner's safety and forbids them from intentionally denying or delaying medical care. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble,* 429 U.S. 97, 104–105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Zentmyer v. Kendall County, Ill.,* 220 F.3d 805, 810 (7th Cir. 2000). Not every injury a prisoner suffers, however, violates the Eighth Amendment. A prisoner must satisfy a two-part test. First, the alleged risk to the prisoner's health or safety must be, objectively, sufficiently serious. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. Second, the defendant must have been deliberately indifferent to the risk. *Id.* The second prong of the test is subjective; the defendant must actually be aware of a substantial risk of serious harm and fail to take reasonable measures to prevent the harm from occurring. *Id.; Henderson v. Sheahan,* 196 F.3d 839, 845 (7th Cir.1999).

On appeal, defendants do not dispute the objective seriousness of the risks to Henard's health and safety. This case there-fore turns on the question of whether the defendants acted with deliberate indifference to the risks.

## A.

█ Henard argues that the district court erred in granting summary judgment in favor of Green because he presented evidence that Green actually knew of the substantial risk that he would collapse on the stairs and ignored that risk when he cuffed and shackled Henard to transport him downstairs. As we have admonished before, summary judgment is inappropriate while the record remains a "swearing contest." *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 933 (7th Cir.1997); *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir.1997).

But a swearing contest is precisely what we have here. Henard and Green both submitted affidavits in support of their summary judgment briefs, and the statement of facts in Henard's summary judgment brief also was sworn. Henard asserted that he told Green he was having "serious" trouble breathing, that he was "very weak and dizzy," and that he needed a wheelchair because he could not stand or walk. He also asserted that Green acknowledged the seriousness of his condition, but proceeded to cuff and shackle him, telling him that he had to accept the restraints or he "wouldn't receive any medical at all." Henard claimed that his restraints "did hinder the plaintiff's fall and placed the plaintiff in more danger." Finally, Henard claimed that, over the course of eight years of confinement, he had observed that "normally" when a prisoner is having trouble breathing, medical staff come to the inmate's cell to examine him. Green, on the other hand, asserted in his affidavit that he was unaware Henard was in danger of collapsing or that he

needed help down the stairs. Green also said he had seen inmates restrained like Henard go up and down stairs "hundreds of times," and that the cuffs and shackles did not interfere with that activity. Significantly, Green does not dispute that it was normal practice for medical staff to examine inmates with breathing problems in their cells.

The district court improperly resolved the parties' disputes about what Green knew and, in some instances, apparently overlooked Henard's sworn statements. We note several examples. The district court concluded that Henard never told Green that he could not walk in spite of Henard's sworn statement that he told Green he "was feeling very weak and dizzy [and] requested a wheelchair." The district court also concluded that Henard did not claim that being restrained aggravated his condition. But Henard did claim that "Plaintiff did have a strap underneath the shackles, and they did hinder the Plaintiff's fall and placed Plaintiff in more danger" and "by cuffing and shackling the Plaintiff, then being behind the Plaintiff with a leash under the Plaintiff's legs … the defendant put Plaintiff at more serious risk, when Plaintiff fell down the stairs." Finally, the district court concluded that Henard never objected to being restrained and that Green did nothing inconsistent with Unit rules before removing Henard from his cell. But Henard's sworn statements include his claim that Green's actions were inconsistent with the normal practice of having medical staff examine inmates with breathing problems in their cells, and that Green told him he had to accept the restraints or he "wouldn't receive any medical at all."

Liberally construing Henard's sworn statements and taking all inferences in his favor as we must, we conclude that there are triable issues concerning both Green's actual knowledge of Henard's respiratory condition and his appreciation of the dangers in transporting Henard down the stairs in shackles. A jury that believed Henard instead of Green reasonably could conclude that Green knew of a substantial risk that Henard could not make it down the stairs by himself, but acted with deliberate indifference when he restrained Henard and took him to the stairs instead of having him examined in his cell. Granting summary judgment in favor of Green was premature.

### B.

■ Henard's claim against Gadberry and Falconbury, however, is less compelling. He contends that the district court erred in granting summary judgment to the nurses because he presented evidence that the nurses inadequately examined him and delayed treatment by not immediately sending him to a doctor or hospital to be x-rayed. It is well settled, however, that neither a difference of opinion about medical treatment nor even gross negligence amounts to deliberate indifference. *See Garvin v. Armstrong,* 236 F.3d 896, 898 (2001); *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996) ("[T]he courts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners."). We recently rejected an Eighth Amendment claim on facts substantially similar to those before us now. *See Higgins,* 178 F.3d at 510–12 (prisoner claimed that a doctor and two nurses acted with deliberate indifference to his dislocated shoulder when they refused to X ray prisoner or send him to the hospital); *see also Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir.1996) ("The Constitution is not a medical code that mandates specific medical treatment."). Regardless of whether the

nurses competently examined Henard, the available evidence shows that the nurses were not at all indifferent to his injuries, but instead took them seriously. They twice examined him immediately after his fall and Gadberry followed up on Henard's condition shortly thereafter. When Henard asked to see a doctor, Gadberry signed him up for sick call at that point. The district court properly granted summary judgment in favor of Gadberry and Falconbury.

### III.

Henard also challenges the district court's denial of his "Motion to Strike Defendants, for Failure to Answer November 12th, Deadline for Plaintiff's Motion to Compel." He asserts that the district court should have sanctioned Green, Gadberry and Falconbury because they failed to produce unspecified documents and other information in violation of a court order. Henard claims that he was thus deprived of information he needs to substantiate his claims.

We review the denial of a motion to sanction for abuse of discretion. *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 739 (7th Cir.1998). "A decision constitutes an abuse of discretion when it is not just clearly incorrect, but downright unreasonable." *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir.1999) (citation omitted). The district court found that Henard's discovery requests were irrelevant to the issues at hand and that, in any event, Green, Gadberry and Falconbury had responded adequately to discovery. Henard does not argue that the district court's denial was legally incorrect, let alone unreasonable. He merely disagrees with the result. Moreover, Henard makes

no effort to identify exactly what information was not produced or how it could have staved off summary judgment. Henard has not shown that the district court abused its discretion in denying his motion.

The district court's grant of summary judgment in favor of Green is REVERSED. The district court's judgment is AFFIRMED in all other respects. This case is REMANDED for proceedings not inconsistent herewith.