**Harold J. RESEL, Plaintiff–Appellant,**

v.

**Patrick FOX, Defendant–Appellee.**

**No. 01–1599.**

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 14, 2001.*

Decided Dec. 20, 2001.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before FAIRCHILD, RIPPLE, and WILLIAMS, Circuit Judges.

## ORDER

Harold Resel sued Waushara County (Wisconsin) Sheriff Patrick Fox[1] under 42 U.S.C. § 1983, alleging that Sheriff Fox

---

1. Throughout the record Mr. Resel refers to "Pat Fox and his agents," but Mr. Resel named only Sheriff Fox as a defendant in the caption of his complaint and served only Sheriff Fox. Therefore, we will only address Mr. Resel's claims against Sheriff Fox.

violated his Eighth Amendment right to be free from cruel and unusual punishment when he was deliberately indifferent to Mr. Resel's medical needs while incarcerated at the Waushara County Jail ("WCJ"). Mr. Resel also alleged that Sheriff Fox violated the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101, and various state laws. The district court granted summary judgment in Sheriff Fox's favor on the Eighth Amendment and ADA claims. The district court then declined to exercise supplemental jurisdiction over Mr. Resel's pendent state-law claims. Mr. Resel appeals, and we affirm.

## I. Background

On July 28, 1998, Mr. Resel was booked into the WCJ for a traffic offense. When he arrived. Mr. Resel needed a colonoscopy because he had undergone surgery for an acute mechanical bowel obstruction the previous week, and he had been experiencing post-operative rectal bleeding. After Mr. Resel was booked, a jailer called the county nurse to schedule a colonoscopy for Mr. Resel. The nurse scheduled the procedure for August 6. The colonoscopy was performed as scheduled. and two days later Mr. Resel had his staples removed.

Throughout August Mr. Resel saw the county nurse three times for flu-like symptoms and gum problems, including cold sores. The nurse first prescribed a saltwater gargle, and when that proved unsuccessful she treated Mr. Resel with peroxide and iron supplements. At the end of August, Mr. Resel saw a dentist for his gum problems. The record is unclear regarding the extent of these problems, but there is no indication that they were serious or life-threatening.

Some two months later, on October 15, Mr. Resel told a jailer that the stitches from his bowel surgery had opened up and his intestines were "herniated." A few minutes later the jailer called the county nurse. The WCJ daily log indicates that, after examining Mr. Resel, the nurse left instructions that "Resel should have stomache [sic] looked at by Dr. If bulge doesn't go back in or if becomes painfull [sic], immediate Dr. attn. needed! Surgery." The nurse's medical report further explains her instructions: "Advised should see M.D. sometime – in the meantime need to be aware that if he complains of pain in area that isn't relieved, or if bulge does not go down when laying, it is an emergency and should seek immediate medical assessment." Mr. Resel was taken to a doctor the following morning. The record does not include any information regarding this visit to the doctor or any treatment that Mr. Resel received

Five days later, on October 21, Mr. Resel requested to see a doctor for abdominal pain, and Sheriff Fox told him that he would get the help that he needed. The following day Mr. Resel again requested to see a doctor, and the jail staff told him that he would see a doctor as soon as possible. On several occasions Mr. Resel asked "Tom, the head jailer," to make a doctor's appointment for him, but according to Mr. Resel. "Tom" would either tell him that he forgot to make the appointment or that his condition was not life-threatening. According to Mr. Resel and the affidavits of several other inmates. Mr. Resel specifically asked Sheriff Fox to make a doctor's appointment for him. In his affidavit. Sheriff Fox denies that he "personally receive[d] any requests from Harold James Resel for medical attention."

The WCJ log shows that on October 29 – eight days after Mr. Resel's first request for a doctor – a jailer called to "reschedule" an appointment for Mr. Resel, but was unable to get through. An

October 30 WCJ log entry states. "Rescheduled Resels [sic] Dr. Appt. for 11/12/98. That's the earliest available time, finally got thru to someone." On November 12 – twenty-three days after Mr. Resel's first request – he was taken to see the doctor. Although the record contains no medical notes regarding this visit to the doctor, the WCJ log indicates that Mr. Resel returned from the doctor with instructions that he needed surgery and was not to lift anything. One week later Mr. Resel was released from the WCJ based on the Sheriff Department's and District Attorney's joint request to modify Resel's sentence to "time-served" in order to accommodate his medical problems.

Mr. Resel filed this lawsuit in November 1999, alleging that Sheriff Fox violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. Mr. Resel also alleged an ADA violation, assault, and battery. The district court granted the defendant's motion for summary judgment, concluding that Sheriff Fox did not act with deliberate indifference to Mr. Resel's serious medical needs and that the ADA was not relevant to this case because "[t]he ADA cannot be used as a basis to bring an action for inappropriate medical care." The court then declined to exercise supplemental jurisdiction over Mr. Resel's state-law claims and dismissed them without prejudice.

## II. Analysis

We review a grant of summary judgment *de novo*, construing all facts and drawing all reasonable inferences from the record in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir.2000). Summary judgment is proper when the record reveals no genuine issue of material fact, and

the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

## A. Eighth Amendment

Mr. Resel argues that the district court erred in granting summary judgment because Sheriff Fox acted with deliberate indifference in delaying his access to medical treatment for his hernia, thereby causing him pain and suffering. The Eighth Amendment protects prisoners from deliberate indifference to serious medical needs, including delayed access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir.2000). To establish liability, the prisoner must show: (1) that his medical need was objectively serious; and (2) that the official knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994): *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir.2001).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir.2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.1997)). Although Mr. Resel has not described his medical condition in detail, he does argue that his intestines had "herniated," and we do not doubt from the limited medical information that does exist in the record that his condition can be a serious medical condition. For purposes of this appeal, we will assume that Mr. Resel's condition was sufficiently serious.

As for the second prong, Mr. Resel argues that Sheriff Fox acted with deliberate indifference to his health by making him wait twenty-three days to see

a doctor after he complained of abdominal pains on October 21, 1998. A prison official cannot be found liable under the Eighth Amendment, however, unless the official is "both [ ] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... also draw[s] the inference." *Farmer*, 511 U.S. at 837: *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir.1998). Moreover, "[t]he doctrine of *respondeat superior* does not apply to § 1983 actions: thus to be held individually liable, a defendant must be personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citation omitted). The parties here dispute whether Mr. Resel personally asked Sheriff Fox to see a doctor. Mr. Resel offered several affidavits from inmates at the WCJ stating that they witnessed Mr. Resel personally ask Sheriff Fox to see a doctor. Sheriff Fox, on the other hand, denies ever receiving such a request. Viewing the evidence in the light most favorable to Mr. Resel, we will assume for purposes of this appeal that Mr. Resel personally asked Sheriff Fox to see a doctor.

But even assuming that Mr. Resel personally asked Sheriff Fox to see a doctor. Mr. Resel has not established that Sheriff Fox was aware of the seriousness of his condition. There is no suggestion anywhere in the record that Sheriff Fox knew about the delay in Mr. Resel's treatment, facilitated it, approved it, condoned it, or turned a blind eye to it. *See Zentmyer*, 220 F.3d at 812 (affirming grant of summary judgment against jail supervisor because he reasonably relied on his deputies' reports that inmate was receiving proper medication and had no other involvement with the inmate's medical treatment). Absent such involvement, a supervisor who is not personally responsible for the delay cannot be accountable for the conduct of his subordinates. *See Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir.1997). Mr. Resel did not establish that Sheriff Fox knew of the nurse's instructions on October 15 to take Mr. Resel to a doctor immediately if he experienced abdominal pain. Also, Mr. Resel did not show that Sheriff Fox knew of the jailers' response to Mr. Resel's October 21 request to see a doctor. At most, all that Mr. Resel has shown is that he personally asked Sheriff Fox to see a doctor, which alone is not sufficient to establish Sheriff Fox's deliberate indifference to Mr. Resel's serious medical need.

■ Furthermore, in determining whether Sheriff Fox was deliberately indifferent to Mr. Resel's serious medical needs, we also examine the totality of Mr. Resel's medical care and view isolated instances of neglect in light of Mr. Resel's overall treatment. *See Reed v. McBride*, 178 F.3d 849, 855 (7th Cir.1999); *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). During the three and one-half months that Mr. Resel was held in the WCJ, he saw a doctor on five occasions, a dentist on one occasion, and the nurse on at least four occasions. Even though Mr. Resel waited twenty-three days to see a doctor after his request for a doctor on October 21, 1998, the continuous and overall care that Mr. Resel otherwise received during his stay at the WCJ also counsels against a finding of deliberate indifference. *See Estelle*, 429 U.S. at 107–08: *Dunigan v. Winnebago County*, 165 F.3d 587, 591 (7th Cir.1999): *Gutierrez*, 111 F.3d at 1375.

## B. ADA

■ Mr. Resel next argues that the district court erred when it dismissed his ADA claim. The ADA confers rights on "qualified individual[s] with a disability"

who are denied access to "services, programs, or activities of a public entity." 42 U.S.C. § 12132. But a prison official does not violate the ADA when failing "to attend to the medical needs of ... disabled prisoners." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) (concluding that a hernia is not a disability under the ADA). The ADA is an anti-discrimination statute, and Mr. Resel has not alleged that he was discriminated against because he was disabled. A claim for inadequate medical treatment is improper under the ADA. *Id.*

Finally, the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over the pendent state-law claims because it had dismissed all claims over which it had had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Kennedy v. Schoenberg, Fisher & Newman Ltd.*, 140 F.3d 716, 727–28 (7th Cir. 1998).

AFFIRMED.