John HERNDON, Plaintiff,

v.

Randy JOHNSON, in his official capacity as Sheriff of Pulaski County, Arkansas; Buddy Villines, as County Judge of Pulaski County, Arkansas; and John Does 1–5, Defendants.

No. LR–C–96–481.

United States District Court,
E.D. Arkansas,
Western Division.

April 17, 1997.

———

Luther Oneal Sutter, Little Rock, AR, for Plaintiff.

David M. Fuqua, Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., North Little Rock, AR, for Defendant.

## *ORDER DENYING MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS*

EISELE, District Judge.

Before the Court is Defendants' Motion for Partial Judgment on the Pleadings. Plaintiff has responded, and the Court has reviewed the submissions of the parties. For the reasons set forth in this Order, the Court will deny Defendants' Motion.

*I*

This case arises out of the alleged conditions of Plaintiff John Herndon's confinement in the Pulaski County Jail. On May 31, 1996, Plaintiff was arrested and incarcerated in that facility. According to Plaintiff, he has a fused spine and regularly uses mobility aids. Plaintiff states that he needed certain assistive devices to allow him to have bowel movements and to prevent bed sores and other problems with his fused spine. He asserts that Defendant Randy Johnson, Pulaski County Sheriff, refused to provide him with those assistive devices for no legally justifiable reason. Moreover, Plaintiff alleges that Defendants John Does 1–5, unidentified employees of the Pulaski County Jail, directed prisoners or other employees to carry Plaintiff up steps to conduct visitation.

Plaintiff filed the instant lawsuit and his Application for TRO and Motion for Preliminary Injunction on June 21, 1996. The Court denied Plaintiff's request for a temporary restraining order on June 21 and held in abeyance pending discovery Plaintiff's Motion for Preliminary Injunction.

Plaintiff submitted his Amended Complaint on July 2, 1996. Plaintiff purported to state claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132

(hereinafter the "ADA"); the Rehabilitation Act of 1973, 29 U.S.C. § 794; 42 U.S.C. § 1983 for violations of his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution; and the Arkansas Civil Rights Act of 1993. Plaintiff states that the Pulaski County Jail and other county facilities lack accessible visitation rooms and accessible restrooms. Plaintiff alleges that Defendants Johnson and Buddy Villines, Pulaski County Judge, were required to self–evaluate the facilities, services, policies, and practices of Pulaski County but that they failed to do so. Plaintiff also alleges that Defendants Johnson and Villines failed to adopt and publish a grievance procedure for disabled individuals. On August 15, 1996, Defendants answered Plaintiff's Amended Complaint.

By letter dated September 3, 1996, Plaintiff advised the Court that he wished to withdraw his motion for Preliminary Injunction because Pulaski County had provided the assistive devices requested by Plaintiff.

On November 8, 1996, Defendants filed the instant Motion for Partial Judgment on the Pleadings. They ask the Court to hold that neither the ADA nor the Rehabilitation Act applies to prisons and that, therefore, Plaintiff has failed to state a claim under either statute upon which the Court may grant relief.

## II

■ The Court will deny Defendants' Motion. The sole question before the Court is the application of the ADA and the Rehabilitation Act to state correctional facilities.[1] Reasoning regarding either the ADA or the Rehabilitation Act generally applies equally to the other statute. "Because the same basic standards and definitions are used under both Acts, cases interpreting either are applicable and interchangeable for the purposes of our discussion." *Allison v. Department of Corrections*, 94 F.3d 494, 497 (8th Cir.1996) (citing *Wooten v. Farmland Foods*, 58 F.3d 382, 385 n. 2 (8th Cir.1995), and *Vande Zande v. Wisconsin Department of*

*Administration*, 44 F.3d 538, 542 (7th Cir. 1995)).

### A. Precedent

The submissions of the parties cite no case from the Eighth Circuit Court of Appeals, and Defendants' brief states that "[t]he Eighth Circuit has not decided these issues" Brief in Support at 3. However, the Eighth Circuit has recently allowed at least one inmate to bring an action for damages and affirmative relief under the Rehabilitations Act. *See Lue v. Moore*, 43 F.3d 1203, 1205 (8th Cir.1994). Although the Eighth Circuit panel did not directly confront the issue of the applicability of the Rehabilitation Act to correctional facilities, the Court assumed the Act's applicability and engaged in a detailed analysis of the qualified–immunity defense in that context. In *Love v. Westville Correctional Center*, a panel of the Seventh Circuit Court of Appeals cited the Eighth Circuit decision in *Lue* and noted that the Eighth Circuit has "applied the . . . Rehabilitation Act to state prisons." 103 F.3d 558, 559 (7th Cir.1996). In an earlier case, *Journey v. Vitek*, the Eighth Circuit affirmed the district court's judgment for certain corrections officials on a Rehabilitation Act claim and never questioned the Act's applicability. *See* 685 F.2d 239, 242 (1982). Thus, although the Eighth Circuit has not dealt head–on with the issue before the Court, the few indications of the Eighth Circuit's thinking tend to help Plaintiff.

The other circuit courts have split on whether the ADA and the Rehabilitation Act apply to correctional facilities. The only circuit courts which have indicated that the statutes do not apply to correctional facilities have so indicated only in *dicta*. In *Love*, the Seventh Circuit court cited the divergence of views among the circuits and assumed without deciding, for purposes of the appeal, that the ADA does apply to prisoners' access to certain programs. *See* 103 F.3d at 559. In another recent opinion, however, Chief Judge Posner commented that the court "doubt[ed]" that the ADA had any applica-

---

1. Accordingly, the Court expresses no opinion on the merits of Plaintiff's claims or on any other issue Defendants might raise.

tion to prisoners. *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996). In the lead case setting forth Defendants' position, the Fourth Circuit Court of Appeals has expressed its hesitation to hold that the ADA and the Rehabilitation Act cover the management of state prisons. *See Torcasio v. Murray,* 57 F.3d 1340, 1344–47 (4th Cir.1995), *cert. denied sub nom. Torcasio v. Angelone,* —— U.S. ——, 116 S.Ct. 772, 133 L.Ed.2d 724 (1996) (citing issues of statutory construction and state sovereignty to support conclusion that application of Acts not "clearly established" for purpose of qualified immunity analysis). The Tenth Circuit Court of Appeals has held that the Rehabilitation Act does not apply to *federal* prisoners because the Bureau of Prisons does not fit the definition of "programs or activities" covered by the Rehabilitation Act, *see Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991), and that neither the ADA nor the Rehabilitation Act applies to issues of prison *employment. See White v. State of Colorado,* 82 F.3d 364, 367 (10th Cir.1996).

On the other hand, the Ninth Circuit Court of Appeals has applied the ADA and the Rehabilitation Act in the prison context and has published a line of cases honing its view. *See Duffy v. Riveland,* 98 F.3d 447, 453–56 (9th Cir.1996) (analyzing claims arising from disciplinary proceeding); *Gates v. Rowland,* 39 F.3d 1439, 1447 (9th Cir.1994) (applying standard for review of constitutional rights in prison setting to review of Rehabilitation Act statutory rights in prison setting); *Bonner v. Lewis,* 857 F.2d 559, 562 (9th Cir.1988) (applying Rehabilitation Act to prisons receiving federal financial assistance). Citing Ninth Circuit precedent, the Eleventh Circuit Court of Appeals has held that the Rehabilitation Act applies in the prison context. *See Harris v. Thigpen,* 941 F.2d 1495, 1522 (11th Cir.1991) (citing *Bonner,* 857 F.2d at 562). Finally, a panel of the Third Circuit Court of Appeals relied on the plain language of the ADA and the Rehabilitation Act to conclude that those statutes apply to correction facilities. *See Inmates of the Allegheny County Jail v. Wecht,* 93 F.3d 1124, 1996 WL 474106, *6–7 (3d Cir. Aug.22, 1996), *vacated for reh'g*

en banc, 93 F.3d 1146 (3d Cir. Sept.20, 1996). That opinion, however, was withdrawn and vacated in light of the decision of the Third Circuit to grant rehearing *en banc. See Inmates of the Allegheny County Jail,* 93 F.3d at 1146.

## B. *Discussion*

Of course, any discussion of a statute's applicability must begin with the plain language of the statute. *See United States v. Alvarez–Sanchez,* 511 U.S. 350, 355–58, 114 S.Ct. 1599, 1603, 128 L.Ed.2d 319 (1994). Title II of the ADA guarantees that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Public entities, for purposes of the ADA, include "*any* State or local government [and] *any* department, agency, special purpose district, or other instrumentality of a State ... or local government." 42 U.S.C. § 12131(1) (emphasis added). Section 504 of the Rehabilitation Act indicates that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under *any* program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a) (emphasis added).[2]

Some courts have purported to rely on that language to suggest that the ADA and the Rehabilitation Act do not apply to state prisons. For example, in finding that the statute did not "clearly establish" that the ADA covers state prisons, the Fourth Circuit Court of Appeals pointed to the "broad, non-specific language" contained in the ADA. *See Torcasio,* 57 F.3d at 1346. The Fourth Circuit court also argued that certain language in the ADA and the Rehabilitation Act cannot be naturally read as including state prisons:

> We imagine that most prison officials would be surprised to learn that they were subject to these laws: "[p]rison adminis-

---

**2.** Defendants specifically admit that "the County does receive some federal grants for programs

and projects." Answer to Amended Complaint at 3.

trators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody," [*Procunier v.] Martinez*, 416 U.S. [396,] 404, 94 S.Ct. [1800,] 1807 [, 40 L.Ed.2d 224 (1974) ]; they generally do not provide "services," "programs," or "activities" as those terms are ordinarily understood. A prohibition on discrimination in those three realms thus would not seem to reach prisons.

Similarly, the definition of "qualified individual with a disability" is not naturally read as encompassing inmates in state prisons. .... A prisoner is not normally thought of as one who would have occasion to "meet[ ] the essential eligibility requirements" for receipt of or participation in the services, programs, or activities of a public entity. The terms "eligible" and "participate" imply voluntariness on the part of an applicant who seeks a benefit from the state; they do not bring to mind prisoners who are being held against their will.

*Torcasio*, 57 F.3d at 1347; *see also Little v. Lycoming County*, 912 F.Supp. 809, 819 (M.D.Pa.) (agreeing with *Torcasio*), *aff'd. without opinion, Little v. Smith*, 101 F.3d 691 (3d Cir.1996); *Longo v. Barbo*, 1996 WL 453570, *2 (D.N.J. August 9, 1996) (same); *Crawford v. Indiana Department of Correction*, 937 F.Supp. 785, 790 (N.D.Ind.1996) (same).

■ The Court must respectfully disagree. The plain language of these statutes suggests that their prohibitions apply to state correctional facilities. Although the statutes do not refer specifically to prisons, they do use the expansive word *any* with references to state enterprises. *See Bonner*, 857 F.2d at 562 (noting that "the plain language of the Justice Department's implementing regulations, 28 C.F.R. § 42.503, and the [Rehabilitation] Act itself, which states that it applies to '*any* program or activity receiving Federal financial assistance,' 29 U.S.C. § 794 (emphasis added) belies" argument that statute not intended to apply to prisoners). "The word 'any' is generally used in the sense of 'all' or

'every' and its meaning is most comprehensible" *Niece v. Fitzner*, 941 F.Supp. 1497, 1506 (E.D.Mich.1996) (internal quotations and citations omitted). Without some limiting language and absent an absurd result, the Court will interpret the word *any* to mean *any* and will not read unnecessary exceptions into statutory language.

Furthermore, the Court is unpersuaded that the language of the statutes is ill–fitting in the prison context. It seems clear that visitation programs, the provision of beds and toilets, and the maintenance of guards are all "services" provided to inmates at the Pulaski County facility. The Court does not agree that voluntariness is an essential element of participation. Other district courts, in well–reasoned opinions, agree. *See, e.g., Saunders v. Horn*, 960 F.Supp. 893, 897–98 (E.D.Pa.1997); *Kaufman v. Carter*, 952 F.Supp. 520, 530 (W.D.Mich.1996). In *Saunders*, the United States District Court for the Eastern District of Pennsylvania insightfully commented that

[i]t would be anomalous to follow the Fourth Circuit's suggestion in *Torcasio* that the Rehabilitation Act and the ADA are inapplicable to programs and services that are obligatory in nature. Such a limitation would appear to immunize disability–based discrimination in the provision of such compulsory services as public education, jury service, and mandatory inoculations. Nothing in the texts of the ADA and the Rehabilitation Act hints at such a result.

*Saunders*, 960 F.Supp. at 901. This Court embraces that reasoning.

The administrative regulations promulgated pursuant to the ADA and the Rehabilitation Act by the Justice Department credit application of those statutes to connectional facilities. The Rehabilitation Act regulations provide that "[t]he term *program* means the operations of the agency or organizational unit of government receiving or substantially benefiting from the Federal assistance awarded, e.g., a police department or *department of corrections*. 28 C.F.R. § 42.540(h) (1995) (emphasis added)." *Kaufman*, 952 F.Supp. at 528. The ADA regulations provide similar support:

These regulations provide that "[a]ll programs, services, and regulatory activities relating to law enforcement, public safety, and the administration of justice, including courts and *correctional institutions ...*" are subject to the ADA. 28 C.F.R. § 35.190(b)(6) (1995) (emphasis added). The Appendix to this section explains that public entities must provide attendant care "in special circumstances, such as where the individual is an inmate of a custodial or *correctional institution.*" 28 C.F.R. Part 35, Appendix A, at 460–61 (1995) (emphasis added).

*Kaufman,* 952 F.Supp. at 530. The United States District Court for the Eastern District of Michigan has provided the following analysis:

"Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). In fact, such regulations are entitled to "controlling weight" unless they are "arbitrary, capricious or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. at 2782. As the Supreme Court has noted, the regulations implementing the Rehabilitation Act provide "an important source of guidance on the meaning of § 504." *Alexander v. Choate,* 469 U.S. 287, 304 n. 24, 105 S.Ct. 712, 722 n. 24, 83 L.Ed.2d 661 (1985). The same is true of the regulations promulgated under the ADA: "Because Title II was enacted with broad language and directed to the Department of Justice to promulgate regulations [thereunder], the regulations which the Department promulgated are entitled to substantial deference." *Helen L v. DiDario,* 46 F.3d 325, 331 (3d Cir.) (citing *Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982)), *cert. denied,* —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995). Accordingly, the Court should conclude that section 504 and the ADA apply to state prisons.

*Niece,* 941 F.Supp. at 1506–07.

Other rationales employed by courts which have suggested that the ADA and Rehabilita-

tion Act should not apply in this case stem from concerns sounding in federalism and public policy. The Fourth Circuit reasoned as follows:

It cannot be disputed that the management of state prisons is a core state function. As the Supreme Court has stated, "[i]t is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser v. Rodriguez,* 411 U.S. 475, 491–92, 93 S.Ct. 1827. 1837, 36 L.Ed.2d 439 (1973). Indeed, it is elementary that "maintenance of penal institutions is an essential part" of one of government's "primary functions"— "the preservation of societal order through enforcement of the criminal law." *Procunier v. Martinez,* 416 U.S. 396, 412, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974)....

That the management of state prisons is to be left to the states, as free as possible of federal interference, is confirmed by a long line of Supreme Court precedent....

*Torcasio,* 57 F.3d at 1345. The Seventh Circuit Court of Appeals has provided the following commentary:

It is very far from clear that prisoners should be considered "qualified individual[s]" within the meaning of the Act. Could Congress really have intended disabled prisoners to be mainstreamed into an already highly restricted prison society? Most rights of free Americans, including constitutional rights such as the right to free speech, to the free exercise of religion, and to marry, are curtailed when asserted by prisoners; and there are formidable practical objections to burdening prisons with having to comply with the onerous requirements of the Act, especially when we reflect that alcoholism and other forms of addiction are disabilities within the meaning of the Act and affect a substantial proportion of the prison population....

*Bryant,* 84 F.3d at 248–49.

Other courts' concerns based on the federal system fail to persuade this Court. The Court recognizes that the management of state prisons is a core governmental responsibility. As the Third Circuit panel reasoned

in *Inmates of Allegheny County Jail,* however, "so too are the management of police and firefighting forces, the management of child protection services, and the management of the court system—state function routinely understood to be covered by the Rehabilitation Act and the ADA notwithstanding that these function are not expressly referred to in either of the statutes." 1996 WL 474106 at *8 (citing cases). Congress could easily have exempted correctional facilities expressly in statutory language but chose, rather, to employ broad, encompassing language, and to abrogate with clarity the states' Eleventh Amendment immunity[3] Thus, it is the opinion of the Court that Congress has spoken on this point and has acted within its power under the Supremacy Clause and the Fourteenth Amendment to upset the states' general freedom to conduct state functions as they desire.

Finally, the Court is convinced that the articulated public policy concerns should not prohibit application of the ADA and the Rehabilitation Acts to state correctional facilities. Federal courts are accustomed to applying the law in a manner sensitive to the unique problems encountered in managing prisons, and there has been no indication that the ADA and the Rehabilitation Act should apply to prisons in the same manner in which they would apply, for example, to a courthouse. The ADA and the Rehabilitation Act have been applied in the context of a correctional facility in a manner that attended to the significant differences between managing prisons and undertaking other endeavors. *See Gates,* 39 F.3d at 1447 (applying *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) standard applicable to constitutional violations to Rehabilitation Act violations). In sum, the Court respects the interests that the Fourth and Seventh Circuits seem inclined to protect but concludes that the statutory language is unambiguous in its application to state correctional facilities and the federal courts are capable of applying the law in a manner that attends to the implicated public policy concerns.

For the foregoing reasons, the Court must deny Defendants' Motion.

### III

IT IS THEREFORE ORDERED that Defendant' Motion for Partial Judgment on the Pleadings[4] be, and it is hereby, DENIED.

---

3. 42 U.S.C. § 2000d–7 provides that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act." Similarly, 42 U.S.C. § 12202 states that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of the chapter [of the ADA]."

4. Docket No. 13.

